## THE STATE v. KOTOVSKY, *Appellant.*

1. **The Test of Insanity in Criminal Cases.** The insanity which will constitute a valid defense to a criminal charge is such only as disabled the defendant from knowing the right from the wrong of the particular act which is the subject of the charge.

2. **Deliberation**: PREMEDITATION. The court restates the definitions of these terms, and the distinctions between them.

3. **Murder**: HEAT OF PASSION. A homicide committed in a heat of passion engendered, not by what was legal provocation at common law to reduce the offense from murder to manslaughter, but by opprobrious epithets or other insults sufficient to arouse the same heat of passion that would be caused by a technical legal provocation, is murder in the second degree. The rejection of her suitor by a young woman cannot be regarded as just cause for such heat of passion.

4. ————: "REASONABLE PROVOCATION." An instruction is erroneous, which gives the jury to understand that the only provocation which can produce that heat of passion which will divest a homicide of the element of deliberation is "reasonable" provocation; for "reasonable" is equivalent to "lawful" or "adequate" provocation. In a case where there is evidence of such just provocation as will reduce murder to the second degree, the error would be fatal; but where there is no evidence of any provocation, it would be harmless and the judgment should not be reversed for it.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Price & Noland* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

HENRY, J.—At the October term, 1878, of the St. Louis

criminal court, the defendant was indicted for the murder of Augusta Simon. After several continuances, one mistrial and one trial resulting in his conviction, which was set aside by the criminal court, he was finally tried at the October term, 1880, and convicted of murder in the first degree. He appealed to the St. Louis court of appeals, which affirmed the judgment, and the cause is now here on appeal from that court.

The facts of the case are that the defendant was enamored of the deceased, paid her some attention, and became jealous of the attention paid her by another, and, enraged by her refusal to accompany him to the St. Louis fair grounds, procured a pistol, three or four days before the homicide, and, on that evening, placed himself at the fence, in front of the house in which deceased was employed as a servant, and when, as was her custom in the evening, known to the defendant, she came from the hoi·e to go to a saloon near by for a pitcher of beer, in company with Anna Moody, he followed them a short distance, and sat down on the sidewalk by a fence, where he remained until the girls returned on their way home, and as they approached him, he arose, took hold of the deceased, and remarking, "Is that you, Augusta?" fired the fatal shot, pushing away Anna Moody, who was walking by her side next the fence.

The sole defense relied upon was insanity, and the complaint is that the instruction on that subject, given by the court, was erroneous, and that the court gave no instruction with regard to murder in the second degree, and incorrectly defined the term "deliberation."

The instruction in relation to insanity was in exact conformity with what this court recently announced as the

1. THE TEST OF IN- law in the *State v. Redemeier*, 71 Mo. 175, and
SANITY IN CRIMI-
NAL CASES.       yet more recently in the *State v. Erb, ante*, p. 199; and while two members of this court (Judge Hough and I) do not think that the only legal test of insanity is " the ability to know the right from the wrong of the par-

ticular act," but that one knowing the right from the wrong may, in consequence of organic mental derangement, be incapable of exercising the will, and is, therefore, not amenable criminally for the act, three of our associates are of different opinion, and the judgment, therefore, can-not be reversed for this alleged error. Besides, there was no evidence tending to show that phase of insanity, but it all conduced to show a general derangement of the mind, and for that reason the instructions asked for by the defendant, and refused, were probably correctly refused, but we do not mean to express an opinion on that question.

Nor did the court err in refusing to instruct the jury in relation to murder in the second degree.  If the defend-

2. DELIBERATION: premeditation. ant was so insane that he had not the men-tal capacity to deliberate, neither could he premeditate.  They are of the same character of mental operations, differing only in degree.  It is difficult to for-mulate the distinction.  It is more easily illustrated than defined.  Deliberation is but prolonged premeditation.  In other words, in law, deliberation is premeditation, in a cool state of the blood, or, where there has been heat of passion, it is premeditation continued beyond the period within which there has been time for the blood to cool, in the given case.  We are now dealing with legal definitions, and not with the nomenclature of mental philosophy.  Premeditation has been defined by the Supreme Court of this State, in every capital case which has been before it for half a century, as "thought of beforehand, for any length of time, however short."  Deliberation is also pre-meditation, but is something more.  It is not only to think of beforehand, which may be but for an instant, but the inclination to do the act is considered, weighed, pondered upon, for such a length of time after a provocation is given, as the jury may find was sufficient for the blood to cool.  One in "a heat of passion" may premeditate without de-liberating.  Deliberation is only exercised in a "cool state

of 'the blood," while premeditation may be, either in that state of the blood, or in " heat of passion."

Mental excitement is not " heat of passion." " Heat of passion " is a legal phrase, to which a definite meaning has been attached, and although a homicide committed in a technical " heat of passion" was only manslaughter at common law; yet if, notwithstanding there was lawful provocation, there was time for the blood to cool before the commission of the act, the heat of passion was not a palliation, and the homicide was murder. Deliberation, as defined by this court, was not an essential element of murder at common law, but the man who in a passion, engendered by opprobrious words, or other just provocation, as contradistinguished from lawful provocation, slew the one who uttered them, at the instant, was deemed guilty of murder, although the passion engendered by the insult was as great as that produced by a blow, and yet the latter provocation reduced the homicide to manslaughter, while the other did not mitigate tne offense. Our statute declares murders committed by " lying in wait," by poison, and in an attempt to perpetrate certain specified felonies, and all other willful, deliberate and premeditated murders, to be of the first degree; and all other common law murders to be of the second degree; and those murders committed in the heat of passion—engendered, not by what was legal provocation at common law to reduce a homicide from murder to manslaughter, but by opprobrious epithets or other insults, sufficient to arouse 'the same heat of passion which would be caused by a technical legal provocation—are of the second degree. What is such a provocation? An insult to a person, either by accusing him or a member of his immediate family of some infamous act, opprobrious words, or indecent gestures, which convey imputations of criminal baseness against a person or his family, sufficient to arouse in a man of ordinary pride and self-respect a high state of passion and a spirit of resentment, are of such provocations, and the suf-

*3. MURDER: heat of passion.*

ficiency of the provocation is to be determined by the court. The definition of the term "deliberation" by the criminal court in its instruction would have been proper if it had been given in a case in which there was evidence of such a provocation as would reduce the crime to man-slaughter. In this case there was no evidence of any such provocation or heat of passion. The law cannot regard the rejection of her suitor by a young woman as a just cause for such heat of passion. And the preparation made by the defendant several days before the murder, and the man-ner in which it was committed, negative the idea of heat of passion; and even if the provocation had been suffi-cient, there was ample time for the blood to cool after it was given and before the homicide was committed.

The court defined the term "deliberately," as follows : " By the term 'deliberately' is meant in a cool state of the blood, not that heated state which the law 4. ——: "reasona-ble provocation." denominates passion; and the passion here meant is not that which comes of no cause, but that, and that only, which is produced by some reasonable provoca-tion." The words "lawful," "reasonable," "adequate," in this connection are used interchangeably by the law-writers and in judicial decisions. East's P. C., vol. 1, 232; Bishop's Criminal Law, vol. 2, § 697 ; Russell on Crimes, vol. 1, 580 ; Wharton's Criminal Law, vol. 1, §§ 969, 987 ; *State v. Holme,* 54 Mo. 153 ; *Young v. State,* 11 Humph. 200. And the instruction would have been accurately correct, if the defense had relied upon a blow received by the accused from the deceased, but in a case where there is evidence of a just provocation given, which this court holds sufficient to reduce the crime to murder of the second degree, it would be error.

As there was no evidence in this case of any such provocation or heat of passion, the error was harmless. *State v. Talbott,* 73 Mo. 347 ; *State v. Erb, ante,* p. 199. Nor is there any conflict between this case and the case of *Matt. Lewis, ante,* p. 222. The judgment of the court of appeals,

in that case, was affirmed by this court on the sole ground that the continuance refused should have been granted; and the court held, in regard to the same instruction now under consideration, that it was an error, but harmless under the circumstances of that case.

The case of the *State v. Simms*, 68 Mo. 306, and 71 Mo. 538, did not hold that evidence tending to prove the accused insane warranted an instruction on murder in the second degree. From the immediate facts attending the commission of the homicide in that case, apart from any evidence of insanity, the jury might well have found that the element of deliberation was absent.

If Kotovsky was not insane; if he was capable of distinguishing between right and wrong, he was, under the decisions of this court, guilty of murder of the first degree. It was a murder committed by "lying in wait," and if the defendant was not insane, the crime cannot be otherwise classified than as murder of the first degree. This has been uniformly held to be the law in this State in every case in which the question arose, and we think correctly. *Baldwin v. State*, 12 Mo. 223; *State v. McConnell*, 49 Mo. 282, 291. There was not a particle of testimony which would authorize the court or jury to consider any other question than that of defendant's guilt or innocence of murder of the first degree. If insane, he was guilty of no crime, and the jury having passed upon that question, under instructions on that subject which this court holds to be proper, we cannot review their finding on the conflicting evidence, and the judgment is affirmed. All concur.