320 S.W.2d 565 (1959)
STATE of Missouri, Respondent,
v.
William WASHINGTON, Appellant.
No. 47247.
Supreme Court of Missouri, Division No. 2.
February 9, 1959.
*566 Clarence E. Godfrey, St. Louis, for appellant.
John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.
BOHLING, Commissioner.
William Washington was charged with the murder of Vanderbilt B. Montgomery, was convicted of manslaughter, and sentenced to five years' imprisonment. Defendant has appealed. He has filed no brief. The main complaints in his motion for new trial relate to the admission and exclusion of evidence, remarks of the court, and the submissibility of the State's case.
Hattie Mae Washington lived at 2223 Rear, Lucas St., St. Louis, Missouri. The front door of her apartment faced the alley. She was the mother of nine children; two were of an early marriage and seven (two sets of twins and one set of triplets) by William Washington, defendant, with whom she had never married. Defendant and Hattie had separated in 1951, but on occasions he would come to see the children. Defendant's age was fifty-nine. Vanderbilt B. Montgomery was a retired preacher, was in his sixties, served as assistant pastor at a neighborhood church and as janitor for the apartment building where Hattie lived.
About 4:30 or 5:00 p. m., Friday, July 5, 1957, defendant stopped his automobile in the alley, went to Hattie's apartment, stayed a few minutes and left. Later that evening defendant returned and went into the house with a shotgun. David, Hattie's son by her marriage and about 15 years old, was returning home, saw this, and informed officers in a near-by police car. Hattie grabbed the gun when defendant came in and the officers arrived about the time she got the gun. They wanted to know what was causing the commotion. Defendant told them the children were "just having fun"; and he had brought the gun for "Hattie's protection." Hattie told the police she wanted defendant to stay away. The police and defendant left the apartment. About 7:00 a. m. the next morning, defendant returned to the apartment; and, when Hattie answered the door, stated he wanted his shotgun. After some conversation, Hattie gave him the gun and defendant left, stating: "This is all I want; I won't be coming back here any more." Defendant returned again about 9:30 a. m. Hattie was outside, talking with neighbors. Defendant asked about the children and left upon Hattie's informing him.
Rev. Montgomery came to the building soon after 12:00 o'clock. He went into the back yard for a while, and then came to Hattie's apartment, saying he was tired. He sat down on the steps of the apartment, which led from the front door down toward the alley, and talked to the children.
Hattie testified she had a headache, laid down on the bed about 12:30, and fell asleep. The next she knew, someone struck her and told her to wake up. It was defendant. This was about 1:00 p. m. July 6, 1957. Hattie arose. She noticed defendant, who is left-handed, had his left hand in his pocket. Defendant said: "I told you I don't want you all to call the police on me. I am going to end this thing." He then started fussing at Hattie and cursing her. Rev. Montgomery thereupon entered the room and told defendant he should be ashamed and should help rear the children properly instead of acting like he was before them. Defendant told Montgomery that he had nothing to do with it; that he was not talking to him, and accused him of going with Hattie. Montgomery told defendant he was not. Then followed statements between defendant, saying Montgomery was going with Hattie; and Montgomery, saying he was not. Defendant accused Montgomery of lying, cursed him, took a knife out of his pocket, pushed Montgomery and stabbed Montgomery in the neck with the knife, causing the blood to spurt from *567 Montgomery's neck. Hattie Washington and her daughter Corrine testified to the above facts. Neither saw any knife in Rev. Montgomery's hand. Hattie and some of the children then went out of the back door of the apartment and came through the "gangway" to the alley. Hattie saw Montgomery and defendant "wrestling" against defendant's car. She went to the street and informed an officer.
Rev. Montgomery's external and internal jugular veins had been severed, and he was dead upon arrival at the hospital.
Defendant admitted to the officers and on the stand that he cut Rev. Montgomery with his knife.
The assignment in the motion for new trial that the State failed to make a case is without merit.
Defendant objected to testimony given by Dr. John J. Connor, chief pathologist for the coroner's office of the City of St. Louis, who was called by the State in rebuttal, on the ground the testimony was not true rebuttal. This witness testified to certain facts in rebuttal, as well as some facts cumulative of testimony given in chief. Trial courts may exercise a reasonable discretion in allowing evidence in chief to be introduced in rebuttal. Sup.Ct.R. 26.02(5), 42 V.A.M.S.; RSMo 1949, § 546.070(3), V.A.M.S.; State v. Hobson, Mo., 177 S.W. 374 [3, 4]. They also exercise a large discretion with respect to the reception of testimony of a witness whose name is not endorsed on the indictment. State v. Malone, Mo., 301 S.W.2d 750 [12]; State v. Henderson, 212 Mo. 208, 110 S.W. 1078 [1], 17 L.R.A.,N.S., 1100.
Defendant's motion for new trial alleges error in limiting the cross-examination "of the State's witness Hattie Washington as to disputes between she and the defendant over Hattie Washington's drinking and associations with other men" on the ground such testimony would establish bias and prejudice of the witness against defendant. There was testimony establishing that this witness was not friendly toward defendant. They had separated in 1951 after she had seven children by him. He served time in jail in 1952 for the nonsupport of his children. Defendant testified she had caused his arrest. She had difficulty over his paying the $20 weekly allowance for the support of his children. She told the police the evening before the homicide she wanted defendant to stay away. Defendant was at her home on the occasion of the killing scolding and otherwise abusing her for calling the police the evening before. The court early informed counsel for the defendant he could show any ill feeling or dislike the witness might have for defendant. Counsel for defendant asked the witness if she knew certain men, designating them by their first names. The State's objection to naming the parties by their first names was overruled by the court, with the suggestion it would save time if counsel would identify them by their full names. Counsel for defendant did not pursue the inquiry. Later, the witness stated that Rev. Montgomery would come to her home. The witness' daughter Corrine, a State's witness, testified on cross-examination that Rev. Montgomery came to the witness' home maybe as many as ten times before July 6, 1957, and sometimes borrowed money from her mother but never said anything about her father.
With regard to drinking, counsel endeavored by several questions to have the witness state she had been drinking whiskey on the day of the homicide, and in each answer she stated she had not. Then followed: "Q. You never touched a drink of whiskey? A. I said no. "Q. Isn't it a fact that you and the defendant had a number of disputes over your drinking in the house? A. No." Then the State objected and the court sustained the objection.
The foregoing, unless we have inadvertently overlooked some testimony, covers the inquiries of Hattie Washington and other witnesses regarding her "drinking and *568 associations with other men." We do not find prejudicial error established. State v. Loahmann, Mo., 58 S.W.2d 309, 311 [3, 4]; State v. Barnes, 325 Mo. 545, 29 S.W.2d 156 [4]; State v. Curtis, 324 Mo. 58, 23 S.W.2d 122, 125 [8].
Defendant's motion assigns error in overruling a request "for a mistrial on timely objection to the court's statement to the jury that the witness Hattie Washington was not on trial and disputes with defendant were not an issue in the case as said statement was a comment on the evidence and invaded the province of the jury" and such evidence was admissible. The situation developed upon objection by the State to a question asked Hattie Washington and which defendant's counsel asked permission to rephrase, apparently recognizing that the question was subject to objection; and the criticism of the court's remark does not take into consideration the whole thereof. The court also stated that the State was trying defendant for what he did to Rev. Montgomery; that some of the relationship between the witness and defendant formed part of the background, and that the court would rule thereon when presented with it. The court was addressing remarks to defendant's counsel on the law and not commenting upon evidence in the case. Perhaps a portion of the remarks were too broad, but a consideration of the whole indicates that the court intended to rule on such matters as they were presented, and whether Hattie Washington or defendant was in the right, involving the details of their family problems, was not for determination in the instant case. See State v. Moore, Mo., 303 S.W.2d 60, 67 [7].
Another assignment claims error in admitting Hattie Washington's testimony that defendant came to her apartment the night before the homicide with a shotgun and that the police were called on the ground the testimony was not relevant and was an attempt to prove another crime. The point is without merit. At the trial defendant's objection was: "I make objection to any evidence as to the shotgun as not charged in the indictment." We find no objection to testimony about the police being called. The grounds assigned in the motion for new trial were not presented to the trial court when the testimony was offered and may not be successfully urged here. State v. Lindsey, Mo., 80 S.W.2d 123, 125 [6]. Under the State's evidence defendant's bringing the shotgun to Mrs. Washington's home caused her son David to call the officers and the calling of the officers was the occasion for defendant's presence at Mrs. Washington's to abuse and curse her and, in turn, Rev. Montgomery's entreaty in behalf of the children for defendant to conduct himself properly. The difficulty between Mrs. Washington and defendant arising out of his bringing the shotgun to her home was connected with the difficulty between Montgomery and defendant, explained the reason for the presence of the police the evening before, defendant's return to Mrs. Washington's home at the time of the homicide, and the ensuing disturbance which caused Montgomery to intercede in behalf of the children. These facts, in which defendant participated, permitted of an intelligent understanding of the events resulting in the homicide and were admissible. State v. Testerman, 68 Mo. 408, 414(6); State v. Fuller, Mo., 302 S.W.2d 906, 910 [7]; State v. Leonard, Mo., 182 S.W.2d 548 [1]; State v. Tettaton, 159 Mo. 354, 377 (IX), 60 S.W. 743, 750 (9).
The punishment assessed is less than the maximum authorized by § 559.140 RSMo 1949, V.A.M.S., and we find no merit in the assignment that the punishment is cruel and unusual. State v. Politte, Mo., 249 S.W.2d 366 [3]; State v. Hyatt, Mo., 71 S.W.2d 711 [7]; State v. Burchett, Mo., 302 S.W.2d 9 [25], and cases cited.
The assignment that the court erred in giving instructions 1 through 6 was insufficient. State v. Vesper, 316 Mo. 115, 289 S.W. 862 [5]; State v. Edmonson, Mo., 309 S.W.2d 616 [9].
*569 Our examination of matters under Sup.Ct.R. 28.02 discloses no reversible error.
The judgment is affirmed.
BARRETT and STOCKARD, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
STORCKMAN, P. J., EAGER, J., and BROADDUS, Special Judge, concur.