State v. Breen.

———o———

STATE OF MISSOURI, Respondent, *vs.* MICHAEL BREEN, Appellant.

| 59 | 413 |
| 98 | 497 |
| 59 | 413 |
| 108 | 663 |
| 59 | 413 |
| 136 | 307 |
| 59 | '413 |
| 179 | 294 |

1. *Practice, civil—Jury-Commissioner for St. Louis county—Failure to list jurymen.*—The fact that one or more of the jurors who tried an indictment in the county of St. Louis, were not on the list furnished the marshal by the jury-commissioner, where nothing appears to show collusion or improper motives in selecting the jury, or that any injury resulted from such selection, will not work a reversal of the cause.

*Appeal from St. Louis Criminal Court.*

*Sam. Erskine*, for Appellant.

*J. C. Normille*, for Respondent.

VORIES, Judge, delivered the opinion of the court.

This was an indictment for grand larceny. The defendant was tried by a jury, was found guilty and sentenced to im-

prisonment in the penitentiary for a term of two years. After the jury had returned a verdict of "guilty" the defendant filed a motion for a new trial, and in arrest of the judgment, which motions being severally overruled and the defendant excepted and appealed to this court.

The main ground insisted on by the defendant for a new trial and for arresting the judgment, and the only ground insisted on in this court for the reversal of the judgment, is, that three of the jurors who tried the cause and found the verdict against the defendant, had not been selected by the jury-commissioner of St. Louis county and summoned by the marshal in conformity with the statute of this state "to provide a jury system in St. Louis county." This act provides for the appointment of a jury-commissioner for St. Louis county in a manner therein named. The commissioner, after his appointment, is required to take an oath that he will faithfully perform the duties of his office, &c. It is made the duty of the commissioner "between the first day of July and the first day of September, in each year, in person or by deputy, to visit every house in the city and county of St. Louis, and obtain and take down the name and residence of every person (with the exception prescribed by the general law and those specified in the next succeeding section) who is qualified for and subject to the performance of jury duty."

The 7th section of the act exempts persons belonging to military and fire companies, and those not acquainted with the English language, &c., from jury duty. The ninth section requires the commissioner to enter the names of all persons subject to the performance of jury duty in alphabetical order, in a book to be kept for that purpose, which is to be corrected from time to time as required by the act. The 10th section provides that notice shall be given so that if persons who are exempt from jury duty have been listed amongst the list of jurors they can appear and have their names erased, etc. The 13th section provides that after the list of jurors shall have been completed, the commissioner shall write each name on a separate ticket and deposit all the tickets in a hollow

wheel to be provided for that purpose, where they shall remain until afterwards drawn out as directed by the act.

The 14th section provides that when jurors are required to serve in any court, etc., the sheriff or marshal shall obtain the names of persons to be summoned, from the commissioner, who shall furnish the same by drawing tickets from the wheel as directed in the act, so as to prevent any concert or partiality. And it is further provided that the tickets thus drawn shall not be put in the wheel again during the year in which they are drawn and that the drawing shall take place from time to time as jurors are required. The 15th section requires the sheriff or marshal to summon the persons whose names are furnished to attend as jurors at the time directed by the court, etc.

By the affidavits filed with the defendant's motion for a new trial, it is shown that three of the jurors who tried the defendant were not on the list of jurors furnished to the marshal by the jury-commissioner for the St. Louis Criminal Court, and this is, as before stated, the only ground urged by the defendant, in this court, for a reversal of the judgment. The general rule which seems to have been adopted in the different States of the Union is, that the mistake or informality of the officers charged with summoning, returning, selecting and impaneling the jury, will be no ground for a new trial, unless there has been fraud or collusion, or material injury to the defendant. (3 Whart. Cr. L., § 216.) It is not pretended that there was any fraud or collusion on the part of any of the officers concerned in selecting and impaneling the jury in this case; and we would hardly be authorized to say, after the refusal of the trial-court to grant a new trial, and after the stipulation filed by the respective attorneys in the case in which it is admitted by the defendant's attorney that the evidence was sufficient to justify the jury in finding the defendant guilty, that the defendant had been injured by the verdict, this stipulation being all we have in reference to the evidence in the case, the same having been made by the parties to save the trouble and expense of copying the

evidence in the bill of exceptions. Our statute concerning juries (Wagn. Stat., 707) provides by the 2nd section thereof that "every juror, grand and petit, shall be a white male citizen of the State, resident in the county, sober and intelligent, of good reputation, over twenty-one years of age, and otherwise qualified." Whether this section has been changed by striking out the word "white" can make no difference for the purposes of this case. The 3rd section of said act provides that "no exception to a juror on account of his citizenship, non-residence, state or age, or other legal disability, shall be allowed after the jury is sworn." Now, whether this third section only applies to jurors not having the qualifications named in the 2nd section, as it is intimated in the opinion of the court in the case of the State vs. Ross (29 Mo., 32); or whether it applies as well to cases where the objection to the jury or jurors is, that they had been selected and impaneled in entire disregard of the laws of the State regulating their selection, as it seems to be held in the case of the State vs. Blakely (18 Mo., 428), as I view the law, can make no difference. It is true that in the case of the State vs. Ross, before referred to, it was held that where a juror, when being examined as to his qualifications to serve on a jury, had answered that he had not formed or expressed an opinion as to the guilt or innocence of the defendant, which was untrue, and the defendant had no knowledge of the prejudice of the juror, or that he had expressed such prejudice, until after the verdict was returned, a new trial should have been granted. It was also held in Indiana (Rice vs. State, 16 Ind., 298) that where a juror, on being examined, had stated that he had not formed or expressed an opinion as to the guilt of the defendant, and after the verdict it was for the first time discovered that said juror had been one of the grand jury which found the indictment, a new trial should be granted. In these cases and similar cases, it clearly appears that the defendant, without his fault, has been deprived of a substantial right which is to be tried by a jury the members of which are not prejudiced against him. If the burthen is placed on him, of hav-

ing by the evidence to remove a pre-conceived prejudice formed against him as to his guilt, he is certainly injured and ought to have a new trial. But where the objection to the juror only goes to the formalities by which he was selected and impaneled and there is nothing to show that the juror was an improper juror, or that there was any collusion or other improper motives on the part of the officers selecting the jury, and nothing to even raise a suspicion that any injury could have accrued to the defendant, a new trial will not be granted where no objection is made to the juror until after verdict. (The People vs. Ransom, 7 Wend., 417; The People vs. Ferris, 1 Abb. Prac. R., 193; The Inhabitants, etc., vs. Hadley, 1 Peck., 38.)

The main object of the legislature in the passage of the law regulating the selection of jurors in St. Louis county, was not so much to effect the rights of parties to actions, as it was to equalize jury service amongst the inhabitants of the county and incidentally to prevent those who have no business of their own, and who are sometimes vulgarly termed "court-house loafers," from being summoned on juries, and thus to turn over to such persons the jury service of the country. The mode of selecting the jury is so far considered a formality, that courts generally consider such statutes directory and refuse to grant new trials for such causes after verdict, unless it is inferrable from the circumstances that the defendant has been injured by the failure to follow the provisions of the statute. The principle involved in this case was so decided in a late case in this court. (State vs. Pitts, 58 Mo., 556; see, also, the case of The State vs. Blakely before referred to.)

There is no doubt but cases may be found, and in fact cases have been referred to by the defendant, holding a doctrine at variance with the law as before stated and as it is held in this State, but the question is settled so far as this court is concerned.

The judgment will be affirmed; the other judges concur.