THE STATE v. BROWN, *Appellant*.

Division Two, January 31, 1894.

1. **Pleading, Criminal**: INDICTMENT FOR CRIME COMMITTED IN PENITENTIARY. It is not necessary that an indictment of one for a crime committed while confined under sentence in the penitentiary should state the fact of such sentence and confinement, but the offense may be charged in the usual and common form. (R. S. 1889, sec. 3963.)

2. **Practice, Criminal**: MOTION TO QUASH PANEL OF JURORS: AFFIDAVITS. Mere allegations in a motion are no proof of them, and the statement in a motion that it is supported by affidavits is insufficient where the affidavits are not contained in the record.

3. ———: CONSTITUTIONAL LAW: RIGHT OF NEGRO TO HAVE REPRESENTATIVES OF HIS RACE ON JURY. While a negro, in the selection of a jury to pass upon his rights, is, under the fourteenth amendment to the federal constitution, entitled to demand that there shall be no exclusion of his race and no discrimination against them because of their color, still he can not demand as a matter of right that the jury shall be composed in part of negroes.

4. ———: GRAND JUROR ON PETIT JURY: IDEM SONANS: IDEM SIGNIFICANS. The fact that *M. Grolts* was accepted on the panel of forty from which a jury was to be selected to try a charge of murder, and that he answered on his examination that he was a member of the grand jury that found the indictment, where the record shows that *Mathias Gratz* was a member of the grand jury but *M. Grolts* was not, will not constitute error on appeal, as the names are neither *idem sonans* not *idem significans*.

The State v. Brown.

5. ———: OBJECTION TO PANEL OF JURORS. Where a defendant makes no objection and saves no exception to the acceptance of a juror on the panel, he can not raise the point for the first time in the motion for a new trial.

6. ———: ———: PRESUMPTION. In the absence of any evidence, the appellate court will not presume that the trial court permitted any one to make up the panel of forty who had served on the grand jury that found the indictment, the charges of which were then to be tried.

7. ———: HOMICIDE: CONTRADICTION OF DEFENDANT'S TESTIMONY BY PHYSICAL FACTS: INSTRUCTION. Where the circumstances of a homicide are peculiarly atrocious, brutal and malignant, possessing all the constituent elements of murder in the first degree, instructions for murder in the second degree and manslaughter should not be given, notwithstanding the defendant testified that he did not intend to kill.

8. **Practice in Supreme Court**: DIMINUTION OF RECORD. It is too late to suggest a diminution of the record in the supreme court after final submission and error joined.

*Appeal from Cole Circuit Court.*—HON. D. W. SHACKLE-FORD, Judge.

AFFIRMED.

On the third day of August, 1892, Francis Mackin was foreman in the tannery department of the Strauss Saddlery Co., in the Missouri penitentiary, and had charge of that department. Defendant was a convict who had been in the penitentiary for some years and was under the charge and orders of Mackin.

On that day defendant killed Mackin by stabbing him to death with a shoe knife. From defendant's story, angry feelings had existed between Mackin and himself in regard to some sugar that defendant, it seems, had "sent out for," contrary to rules. And some trouble, so defendant states, had existed between the two respecting some information given to Capt. Bradbury about the sugar incident, and also about what Mackin

told Donahoe, the keeper, of defendant's refusing to quit work when ordered to do so. This bad blood, as defendant testified, had existed between defendant and Mackin ever since the March or April prior to the morning of the homicide. On the previous afternoon, Starns, a convict, heard a conversation between Mackin and defendant, in which the former told the latter that "if he didn't do something, that he would have to send him up," which phrase, in penitentiary parlance, means to have him flogged. To which defendant replied, "*if he did, he would kill him before to-morrow night.*" Just after this, Mackin went away, whereupon defendant asked Starns if he would not grind a knife for him, but without saying for what purpose he ˉwished it; which Starns refused to do, and advised defendant to let Mackin alone.

Again on that afternoon, defendant repeated the threat he had previously made. Donahoe, the keeper in the factory, testified that on the morning of the next day, Mackin reported defendant to him, of having refused to obey his orders. Thereupon Donahoe called defendant up to his stand and asked him why he talked so to the foreman; but he denied it and said he did not do any thing of the kind. Owing to the defendant's continued disobedience to Mackin's orders, it became necessary for the latter to report defendant the second time on that morning, and it was after the first report that defendant made a threat to Mackin that he would "*straighten matters with him,*" and this threat was also reported to Donahoe. In ten or fifteen minutes after this threat, defendant being ordered to report for punishment, did the act charged in the indictment.

Melton, a guard in the shop where the homicide was perpetrated testified that on that fatal morning, Mackin was at his desk with one foot on the foot-board and the other on the ground, leaning over on the table,

when witness observed defendant coming down the aisle some fifty feet away, when defendant held up his hand as is customary with prisoners, to show they have nothing in their hands. Defendant continued to move down the aisle till he got about twenty-five feet away, when he went in behind a stack of leather several feet high, and right in behind the foreman and almost instantly Melton heard Mackin halloo "Oh!" two or three times, and looking up he saw defendant cutting him with a knife. Mackin started to run, defendant following him closely and cutting him as he ran, until Mackin ran in behind Melton's chair, when Melton pushed defendant back with his stick, and had his knife taken away from him by Cooper. Melton did not see defendant obtain the knife, but Cooper, a convict did, and he stated he saw defendant pick it up from his bench.

In addition to his other testimony already related, defendant testified that on that morning Mackin had reported him to Donahoe, the keeper, for a violation of rules and that in passing by to go to Donahoe, defendant says that Mackin told him "if he wanted to get two years for him," (that is to do him such violence, as would result in defendant's getting a term of two years in the penitentiary), "it was a good time for him to do it." Defendant further testified that he subsequently went downstairs, where Mackin was at work, in order to get his cap, and go to Donahoe to be "dressed off," as Donahoe promised him he should be, this idea of getting two years for Mackin was ringing in his ears, and when he came near enough to Mackin to see him, he saw a smile playing upon his face, which so enraged him that he seized the knife lying on the barrel and continued his journey toward the deceased until he reached him, and that then, he began the assault which resulted in the death of Mackin. Defendant also testified: "I cut him, but I did not have no intention of killing

*him; if he hadn't told me he wanted me to get two years for him, I never would have cut him at all."*

Mackin received at least seven distinct wounds, one very severe one in the back, and several others on back, breast, shoulders and armpits, from the effect of which he died in a few hours. On this evidence, and much more of the same sort, defendant was found guilty of murder in the first degree, and from the judgment and sentence pronounced on the verdict, he has appealed to this court.

There were no exceptions saved to the giving or refusing of instructions, but a stipulation has been signed by the respective counsel and has been filed in this court as follows: "That the state's instructions hereto attached, being duly certified under the hand and seal of the clerk of the Cole circuit court shall be taken and considered on the hearing of the appeal, in this cause the same as if they were duly inserted and contained in the transcript of the bill of exceptions on file, with objections and exceptions of the defendant properly saved and preserved, both to the action of the court in giving the instructions given in the case, and to its action in refusing the one asked by defendant."

The instructions on behalf of the state thus preserved, are those usually given and embrace murder in the first and second degrees. Other points arising during the trial of the cause will be noticed and the particulars on which they are founded set forth hereafter.

*Edwin Silver* and *A. M. Hough* for appellant.

(1) The court erred in overruling defendant's plea in abatement filed February 20, 1893. The indictment was authorized by a special statute and should have contained the necessary averments as to defend-

ant's convict *status* to bring the prosecution within the statute and to authorize it notwithstanding he was then serving a sentence in the penitentiary as such convict.    R. S. 1889, sec. 3963; *State v. Johnson*, 93 Mo. 322; *State v. Adcock*, 65 Mo. 590.    (2) The defendant's motion to quash the panel of forty should have been sustained.    The facts recited in the motion were supported by affidavit and were not controverted by the state and showed that the defendant was deprived of an impartial jury as guaranteed him by the constitution.    The court also erred in accepting on the panel of forty Mr. Grolts, whose examination on the *voir dire* showed he was a member of the grand jury which found the indictment against the defendant. . The court also erred in overruling the motion to quash the panel of forty because the defendant being a negro was denied the right to have any members of his own race to sit on his case.    Federal Constitution, fourteenth amendment, sec. 1.    (3) The trial court committed error in refusing to instruct the jury as asked by defendant to the effect that if it was defendant's intention only to do the deceased great bodily harm and not to kill him the offense was murder of the second degree.    *State v. O'Hara*, 92 Mo. 59; Wharton's Crim. Law [8 Ed.], sec. 388.    The defendant was a competent witness to testify to his own intention in striking the blows and had a right to the instruction founded on his own evidence.    *State v. Banks*, 73 Mo. 592; *Nichols v. Winfrey*, 79 Mo. 546; *State v. Palmer*, 83 Mo. 572; *State v. Partlow*, 90 Mo. 626; *State v. Williams*, 95 Mo. 250; *State v. Saunders*, 106 Mo. 197. (4)  The court should have instructed the jury on the crime of manslaughter in the third degree under Revised Statutes, 1889, section 3471.  (5) The indictment did not sufficiently charge that the wounds themselves were felonious, premeditated and deliberate.

*R. F. Walker*, Attorney General, *F. E. Luckett*, Prosecuting Attorney, and *J. W. Zevely* for the state.

(1) No error was committed by the trial court in sustaining the motion made by the prosecuting attorney to strike out defendant's plea in abatement. The plea in abatement failed to state facts sufficient to establish a bar or defense to the charge in the indictment. (2) The court very properly overruled defendant's motion to quash the panel of jurors; the fact that the jurors were related to each other, or that they resided in any particular section of the county, was certainly no reason why they should be adjudged incompetent to try this cause. The duty of the court in the selection of a jury is to secure for the defendant a panel who will give him a fair and impartial trial, according to the law and the evidence. *State v. Cunningham*, 100 Mo. 242; *State v. Robinson*, 117 Mo. 649. (3) The instructions in this case (given and refused) were not preserved in the bill of exceptions, but have been filed by stipulation in order that the court may, if it so desires, consider them. It has been repeatedly held in this state that to entitle them to consideration or review, they must be preserved in the bill of exceptions, and that they can only be brought to the attention of the court by so preserving them, together with the exceptions of appellant, to the action of the court, in either giving or refusing them. It is insisted by the respondent that the record in this case fails to show any objections made or exceptions saved to the action of the trial court, either in giving or refusing to give any of the instructions. The rule is that all presumptions must be resolved in favor of the trial court, and where the record fails to show the necessary exceptions to the giving or refusing of instructions, or where the appel-

lant fails to preserve them in the bill of exceptions, this court will presume that they were proper, and that they fairly presented all the issues suggested by the indictment and testimony. *State v. Foster*, 115 Mo. 448; *State v. Elvins*, 101 Mo. 243.

SHERWOOD, J.—I. Various errors have been assigned by defendant's counsel, now to be briefly noticed. And first as to the action of the trial court in striking out, at the state's instance, the plea in abatement to the further prosecution of the cause. This plea sets out in substance: "That at the time of the alleged homicide and prior thereto defendant was and since said time has been confined as a convict in the state penitentiary and that said indictment does not charge or state said fact, and further that, defendant being said convict as aforesaid, defendant is not *now* subject or amenable to trial under said indictment." This plea has for its basis, section 3963, Revised Statutes, 1889, which section, so far as necessary to quote it, is as follows: "* * * And if any convict shall commit any crime in the penitentiary, or in any county of this state while under sentence, the court having jurisdiction of criminal offenses in such county shall have jurisdiction of such offense, and such convict may be charged, tried and convicted in like manner as other persons; and in case of conviction, the sentence of such convict shall not commence to run until the expiration of the sentence under which he may be held: Provided, that if such convict shall be sentenced to death, such sentence shall be executed without regard to the sentence under which said convict may be held in the penitentiary."

If, as the statute recites, "such convict may be charged, tried and convicted in like manner as other

persons," it is difficult to see why an indictment should contain any other or further allegations than are customarily inserted on ordinary occasions. Indeed, the statute by its very terms excludes the idea of any necessity for any statement being made in the indictment except in *common form;* for, if made otherwise, then certainly the convict would not be *"charged * * * in like manner as other persons."* And on this point the analogies of the law may well be invoked where an indictment is for murder committed in the perpetration of another crime, in which case, the indictment always charges the murder in common form, and then upon the trial, evidence showing the perpetration of the murder while in the commission of another felony stands in lieu of all the distinguishing elements of murder in the first degree. *State v. Meyers,* 99 Mo. *loc. cit.* 112, 113, and cases cited.

The remark made in *State v. Johnson,* 93 Mo. *loc. cit.* 76, was consequently wholly *obiter* of the case and of the statute. And the case of *State v. Adcock,* 65 Mo. 590, cited as applicable in *Johnson's case,* has no bearing whatever on the point in hand, because there, the only point decided or necessary to be decided, was that in an indictment for conveying instruments into a jail to aid the escape of a prisoner confined for felony, the particular felony for which he was thus confined need not be set out. It follows that no error occurred in striking out defendant's plea in abatement.

II. Next for consideration is the motion made by defendant to quash the panel of forty, which motion is as follows: "Now comes the defendant in the above cause and moves that the panel of jurors summoned by the sheriff be quashed because: *First.* Said panel is summoned largely from the same neighborhood and the same locality and is composed more or less of brothers, fathers and sons and other relatives and

kinsmen and is not summoned from the body of the county as the law contemplates and requires. *Second.* Because the conduct of the sheriff in so summoning the panel was improper and unjust to the defendant on the trial. *Third.* Because the defendant is a negro and has been unjustly discriminated against in that no members of his race were summoned on the panel of forty or otherwise.

"EDWIN SILVER & A. M. HOUGH,

"Attorneys for Defendant."

It is asserted that this motion is *"supported by affidavit,"* but this statement is not supported by the record. And this court has times too often for citation held that the mere allegations in a motion are no proof of them. But could we go into the third ground alleged in the motion, we would be met at the threshold of the investigation with the obstacle that there is *no evidence* in this record that defendant is a *negro.* But were such evidence present, that defendant is a negro, there is nothing to show that the action of the sheriff deprived him of any right secured by the fourteenth amendment, because in the language of Mr. Justice STRONG in *Virginia v. Rives*, 100 U. S. *loc. cit.* 322, 323: "It *is* a right to which every colored man is entitled, that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them because of their color. But this is a different thing from the right which it is asserted was denied to the petitioners by the state court, viz., a right to have the jury composed in part of colored men. A mixed jury in a particular case is not essential to the equal protection of the laws, and the right to it is not given by any law of Virginia, or by any federal statute. It is not, therefore, guaranteed by the fourteenth amendment."

III.   Error is assigned on the action of the court

in accepting on the panel of forty *M. Grolts*, who, when questioned whether he had served on the grand jury at the December term, 1892, answered, *yes, sir*. The indictment in this case was found on the sixth of December of that year, by a grand jury who were convened the previous day, and in the list of the grand jurors thus convened, the name of M. Grolts does not appear, nor on that panel is it found. It is true on the trial panel the name of Mathias *Gratz* appears, but that is neither *idem sonans* nor *idem significans* with *Grolts*. And, furthermore, it does not appear that defendant took any objection or saved any exception to Grolts being accepted on the panel, and, therefore, could not raise the point for the first time in the motion for a new trial. Moreover, in the absence of any evidence, we will not presume that the trial court permitted any one to make up the panel of forty who had served on the grand jury and assisted in finding the indictment, the charges of which were then about to be tried.

IV. The instructions given at the instance of the *state* have been preserved by the stipulation heretofore copied. As they are in stereotyped form, and as no complaint of them is made, it is unnecessary to notice them. The stipulation, however, while it carefully preserves the "objections and exceptions * * * both to the action of the court in giving the instructions given in the case, and to its action in refusing the one asked by defendant," does not preserve *that instruction*, which is as follows: "If the jury believe from the evidence that the defendant did not intend to kill Mackin, but only to do him great bodily harm, then the offense will be only murder in the second degree, and the jury will so find in their verdict."

But, taking the *intention* for the *deed*, we will consider the refused instruction. It was properly refused

because the evidence shows in the clearest possible manner that the homicide was the result of long-settled and deadly hate.   In this case we have all the constituent elements of murder in the first degree; not a jot or tittle less.   We have hatred; repeated threats, extending down to the time of the homicidal act; endeavors to prepare a lethal weapon, and, finally, we have the covert attack on the object of those threats, and he is stabbed in the *back*, and the assassin still plies his knife on the body of his fleeing victim, till, with difficulty, he is forced back by Melton, as Mackin falls behind the chair, bleeding and covered with many wounds.   Where the circumstances of homicide are thus peculiarly atrocious, thus brutally malignant, a court should not stultify itself by giving an instruction for murder in the second degree.   *State v. Kloss*, 117 Mo. 591, and cases cited.

Everywhere, over the whole superficial area of criminal jurisprudence, the well-settled doctrine that circumstances of great atrocity and cruel and blood-thirsty malignity convert a homicide into murder of the highest grade and thus dispense with other proof otherwise necessary, meets you at every turn, and is taught by the horn books of the profession.   This is a case where *acts* speak louder than *words*, and where a court, in giving instructions, will not rely upon and give full credence to the self-serving testimony of the party accused, to the virtual exclusion of the uncontradicted and incontrovertible *physical facts* in the case. *State v. Anderson*, 89 Mo. 332; 1 S. W. Rep. 135; *State v. Bryant*, 102 Mo. 24; 14 S. W. Rep. 822; *State v. Turlington*, 102 Mo. 642; 15 S. W. Rep. 141; *State v. Nelson*, 118 Mo. 124; 23 S. W. Rep. 1088.

Under these facts and these authorities, the testimony of defendant that he "*did not intend to kill*" the deceased, goes for nothing.   The foregoing remarks

also dispose of the claim that an instruction should have been given on manslaughter in the third degree.

V. No defect is discovered in the indictment, and no error in the record, and we therefore affirm the judgment and direct that the sentence pronounced be executed. All concur.

PER CURIAM.—On petition for *certiorari*, suggesting a diminution, a certified copy of the motion to quash the panel of forty, verified by affidavit is filed with the motion for a *certiorari*, from which it appears that by a misprision of the clerk, this affidavit was omitted, but this suggestion comes too late after final submission and error joined, and, even if granted, would not affect the decision made, and the writ is denied.