# THE STATE v. JACKSON, Appellant.

### Division Two, February 25, 1902.

1. **Juries: MANNER OF SELECTING: DIRECTORY STATUTE.** The statute expressly confers upon courts having jurisdiction in felony cases in counties containing cities of 50,000 and less than 300,000 inhabitants, the power to direct from time to time the number of jurors to be summoned for said court and to make such rules and orders as it may deem proper touching the jury service. The record shows this order was made: "It appearing to the court that the regular panel of jurors is incomplete, the court orders that the following named citizens who are present in open court be placed on the regular panel for the April term, 1901, to-wit," naming five persons. *Held*, that the action of the court in ordering the persons named to be placed on the panel for the term was in accordance with the statute. But even if it were not, the judgment would not be reversed on that ground, since the statutory method of drawing, summoning and impaneling juries is merely directory.

2. ————: **QUALIFICATIONS: VISIBLE MEANS OF SUPPORT.** The finding of the trial court that certain persons were qualified to serve as jurors, for instance, that they had visible means of support, will not be disturbed on appeal unless that finding was clearly against the evidence.

3. **Murder: DELIBERATION: ERRONEOUS DEFINITION: NON-PREJUDICIAL.** The instruction defined "deliberation" as meaning "in a cool state of the blood, not in a heat of passion, caused by some just or lawful cause of provocation to passion; and the court instructs you, that, in this case, there is no evidence tending to show the existence of any such passion or provocation." *Held*, that the definition omits an essential element of the crime, to-wit, the homicide must have been committed in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose, but, nevertheless, the instruction could not have been prejudicial, since the facts of this case show that there was no lawful provocation which could reduce the offense from murder in the first degree to some other grade of homicide.

4. ————: ————: **CONFLICTING INSTRUCTIONS.** Where defendant is convicted of murder in the first degree, it will avail him nothing that an instruction on deliberation is in conflict with another given instruction with respect to murder in the second degree.

State v. Jackson.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

AFFIRMED.

*English & English* for appellant.

(1) The list of forty-seven for the trial of this case contained in the bill of exceptions, shows that notwithstanding there were fifty-two regularly summoned jurors in attendance on the court, these five men were placed upon the panel for the trial of this case. Sec. 3797, R. S. 1899. The statute is aimed at the professional juryman and is intended to prevent the very thing that is here done, viz.: The presence of talesmen upon the regular panel and permitting them to serve in the trial of jury cases throughout the term. The vice of such a course must be only too apparent to any one who has been connected with a court where a large number of criminal cases are tried. The professional juryman enters the box already prejudiced in favor of the State. If he has been a frequent attendant on the court, he has become hardened and biased against accused persons, as do nearly all whose duties throw them in contact with criminal classes. This statute applies only to courts in large cities and is designed to prevent this very thing. It is true that in earlier decisions it was held that the statute relating to the summoning of juries was directory, merely, and that irregularities in this respect will not furnish ground for a new trial unless injury to the defendant be shown to have ensued, but we can not find a late well-considered decision where this rule only is invoked. In most cases no proper exception was taken before the trial, and on this ground the irregularity was ignored. (2) The first instruction defines "deliberate" as follows: "Deliberation means in a cool state of the blood, not in a heat of passion, caused by some just or lawful cause of provocation to passion;

and the court instructs you that under the evidence in this case, there is no evidence tending to show the existence of any such passion or provocation." This is erroneous in that it "omits . . . the essential element of deliberation . . . . that the homicide must have been committed in the furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose." State v. Fairlamb, 121 Mo. 146; State v. Ferguson, 162 Mo. 677; State v. Curtis, 70 Mo. 594; State v. Eaton, 75 Mo. 586. The instruction that there is no evidence of passion or provocation in effect instructs the jury that the killing was deliberate and, hence, is in conflict with the instructions on second degree murder. This instruction is also subject to the vice that it uses the term "heat of passion" without defining it. State v. Skaggs, 159 Mo. 581; State v. Reed, 154 Mo. 129; State v. Strong, 153 Mo. 555.

*Edward C. Crow*, Attorney-General, and *Jerry M. Jeffries* for the State.

Section 3775 applies to cases of this character and expressly provides that the trial court has power to order the sheriff to summons the requisite number of jurors when the county court shall have failed to summon the regular panel. It has been held by our courts that the statutory method of drawing, summoning and impaneling jurors is directory and not mandatory. State v. Mathews, 88 Mo. 121; State v. Gleason, 88 Mo. 582; State v. Albright, 144 Mo. 638; State v. Welsor, 117 Mo. 570; State v. Bauerle, 145 Mo. 15. Where the statute regulates the method of selecting the jury the common law method is not excluded thereby, but may be followed if any exigencies arise. White v. People, 81 Ill. 333; Wilson v. State, 32 Tex. 112; State v. Marsh, 13 Kas. 596.

BURGESS, J.—The defendant was indicted for the murder of one Prophet Everett. He was convicted in the criminal court of Jackson county at its April term, 1901, of murder in the first degree, and sentenced to be hanged. From the sentence and judgment he appeals.

Both the defendant and deceased were negroes. They were but slightly acquainted. On Saturday night, December 22, 1900, they met in a saloon in Kansas City and engaged in a game of cards. They had some disagreement over the game, whereupon deceased arose from the table at which they were playing, and remarked to defendant, "I don't want to bother and fuss with you," and, walked to another part of the room. Shortly thereafter defendant stepped up to deceased and said to him, "I will have something to do with you." Deceased then left that saloon and went to another, which was about two blocks away. Shortly after deceased left the saloon where he and the defendant had been engaged at cards, defendant took from George Washington, another negro, a pistol which Washington had in his pocket, at the same time remarking to him, "I am going to keep it, I need it," and put it in his pocket. He then went to the saloon to which deceased had gone and found him watching a game of cards. Defendant after entering the saloon stepped up behind deceased, and after standing there a few minutes and without any warning to him held the pistol, which he had taken from Washington, within about three feet of the back of the head of deceased, and fired, when deceased at once fell forward upon the floor dead, the ball having entered his head at the back part, passing through the brain, and producing instant death. Deceased was unarmed.

Just at the time of the shooting, two Kansas City police officers entered the front door of the saloon. They were just in time to witness the killing. Immediately after firing the shot and seeing his victim fall to the floor, the defendant rushed out of the back door of the saloon. One of the officers

followed.   The other officer, leaving the building by the front door, rushed to the rear of the building where the defendant, seeing himself cornered and covered with the officers' revolvers, threw up his hands and allowed himself to be placed under arrest.

The first error assigned by defendant complains of the action of the trial court in causing to be placed upon the panel of jurors certain persons whom he claims were not selected in accordance with the statute.   It appears from the record that on the first day of the April term, 1901, of the criminal court of Jackson county, the following order was made, to-wit:   "Now, at this day it appearing to the court that the regular panel of jurors is incomplete, the court orders that the following named citizens who are present in open court be placed on the regular panel for the April term, 1901, to-wit, M. M. Brennan, Miles McNally, Frank Sarver, William Kelly, and W. P. Mulvihill."   Thereafter at the beginning of the trial of said cause the defendant objected to the panel of jurors upon the ground that it contained the names of jurors not drawn or selected in accordance with the provisions of article 2, chapter 42, of the Revised Statutes of 1899, namely, M. M. Brennan, Miles McNally, Frank Sarver, William Kelly and William P. Mulvihill, in that, they were not drawn as provided by said section, and, that a jury could be made from the regular panel, and that said jurors were not selected by the court.   The objection was overruled, and defendant duly excepted.

Section 3795 of article 2, Revised Statutes 1899, with respect to "juries in counties containing cities of 50,000 and less than 300,000 inhabitants," provides for the manner of drawing juries in any circuit court or court having jurisdiction of felony cases in such counties, while section 3801, of the same chapter, expressly confers upon such courts the power to direct from time to time the number of jurors to be summoned for said court and to make such rules and orders as it

may deem proper touching the jury service of the court. It thus clearly appears that the action of the court in ordering the persons named to be placed upon the regular panel for the April term, was in accordance with the statute. But even if it was not it has always been held by this court that the statutory method of drawing, summoning and impaneling juries is merely directory. [State v. Matthews, 88 Mo. 121; State v. Gleason, 88 Mo. 582; State v. Albright, 144 Mo. 638.]

The defendant also objected to the panel upon the ground that it contained the names of jurors who were not qualified under the provisions of section 3799 of said statute, namely, M. M. Brennan, Miles McNally, Frank Sarver, William Kelly and W. P. Mulvihill, in that they have no visible means of support, and upon other grounds unnecessary to mention. These questions were all passed upon by the court whose province it was to do so, and as it does not appear that its finding was clearly against the evidence it should not be disturbed. Thus in State v. Williamson, 106 Mo. 162, it is held that the finding of the trial court as to the qualifications of jurors will not be disturbed, unless it appears that manifest error had been committed, and such was not this case.

The point is made that the court erred in giving the first instruction on the part of the State, in that it defines the word deliberation as meaning "in a cool state of the blood, not in a heat of passion, caused by some just or lawful cause of provocation to passion; and the court instructs you that under the evidence in this case, there is no evidence tending to show the existence of any such passion or provocation." The argument is that the instruction omits the essential element of deliberation, that is, that the homicide must have been committed in the furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose. While the definition of the term deliberation is inaccurate and not in accord with the uniform rulings

of this court, in that it omits an essential element of the crime, that is, that the homicide must have been committed in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose (State v. Wieners, 66 Mo. 13; State v. Avery, 113 Mo. 475; State v. Andrew, 76 Mo. 104; State v. Ward, 74 Mo. 253; State v. Kotovsky, 74 Mo. 249; State v. Ellis, 74 Mo. 219; State v. Stephens, 96 Mo. 638; State v. Fairlamb, 121 Mo. 137; State v. Tettaton, 159 Mo. 354; State v. Furgerson, 162 Mo. 668), the instruction could not have been prejudicial, since there was no lawful provocation which could reduce the offense from murder in the first degree to some other grade of homicide.

Nor does it make any difference that the instruction may have been in conflict with the third instruction given on behalf of the State with respect to murder in the second degree, even if such be the case, for, as defendant was not convicted of murder in that degree we are unable to see how he could possibly have been prejudiced by the instruction.

We are also of the opinion that no such error was committed in the admission of evidence on the part of the State, as would justify a reversal.

The homicide was without justification or excuse, or even a mitigating circumstance. Defendant had a fair trial, and finding no error in the record that would justify us in reversing the judgment, it must stand affirmed, and the sentence ordered to be executed. All concur.