THE STATE v. EVERETT ADAMS, Appellant.

Division Two, December 20, 1926.

1. **GENERAL VERDICT: Murder: Two Counts: Same Transaction.**
Where the information in the first count charged defendant with murder
in the first degree, in the usual language, and in the second count charged
him with murder in the first degree in the perpetration of a robbery from
the person of deceased, both counts being based on the same crime and
relating to the one and the same transaction, and both crimes being defined
as murder in the first degree by the same statute, a general verdict finding
"the defendant guilty of murder in the first degree" was sufficient under
either count. But there was no necessity for the second count, as evidence
in support of its allegations was admissible under the first count.

2. **JURY: Venire of Thirty: Directions to Sheriff.** There is no statute
specifically directing the sheriff from what part of the county extra jurors
are to be summoned. Where the court, in ordering the sheriff to summon
a special venire of thirty-four men in a case wherein appellant was charged
with murder in the first degree, stated that it was necessary to have thirty
men qualified to sit as jurors; that the regular panel consisted of twenty-
four men, and in addition to them the county court had selected twenty-four
alternates; that he suggested that the sheriff summon said alternates, and
in addition ten other high-grade men, and that the ten be selected from the
opposite part of the county from the place where the crime was committed,
and it is manifest from the judge's remarks that he was only desirous of
having a panel af competent and disinterested men, and there is no claim
that the twelve jurors selected to try the case were prejudiced against
appellant, complaint of the manner in which the panel were selected is
without merit.

3. **JUVENILE OFFENDER: Seventeen Years of Age: Determinative
Date: Trial in Circuit Court.** It is not the date the information is filed,
but the date of the commission of the crime, which determines whether the
accused may be a ward of the juvenile court, in counties having less than
fifty thousand inhabitants. But the judge of the circuit court in such
counties may determine that a delinquent child is not a proper subject to
be dealt with in the juvenile court, and it will be presumed, in the absence of
any showing in the record to the contrary, that the court did its duty and
found that the appellant, seventeen years of age two days before the
information was filed and ten days after the commission of the crime, was
not a proper subject to be dealt with under the reformatory provisions of
the law, and therefore it will not be ruled that the case should have first
been submitted to the juvenile court of the county, but it will be held, under
such circumstances, that the case was properly tried in the circuit court.
And the court will take judicial notice that the county contained less than
fifty thousand inhabitants.

4. **CONFESSION: Voluntary.** Clear and substantial evidence that the
written confession of the defendant, a few days under seventeen years of
age, was voluntarily made to officers in another State, and signed by him,
after his arrest and he had made many contradictory statements, and that
no inducements were held out to him to make it, authorizes the court to
permit the confession to be read to the jury by the State.

5. **EVIDENCE: Extraneous Matter: Trouble with Girl: Waiver.** A
seventeen-year-old defendant, passing through this State and having been

given a free ride in the automobile of a traveler, and the murdered body of the traveler having been found by a wayside road, in his written confession made in Kansas, in a town to which he had driven the automobile, stated that a girl in Ohio caused him to leave home, and the sheriff, in testifying to a conversation he later had with defendant, who was on trial charged with murdering the traveler, stated that defendant had told him he left home because of a little trouble he had with a girl. In his trial, defendant's counsel in his statement to the jury said that defendant had had no serious trouble with a girl in Ohio, and thereafter insisted that he had the right to go into the matter fully, and the court permitted him to do so. **Held,** that, under the circumstances, the admission of the evidence relating to defendant's connection with the girl is no ground for reversing a judgment of conviction. The defendant, having invited the error, if any was committed, is in no position to complain of the admission of the evidence.

**6. MURDER:   Accidental Homicide.** The real issue at the trial being whether defendant intentionally killed deceased, as he admitted at the time of his arrest in a voluntary written confession, or whether deceased was accidentally killed by an unsafe automatic pistol carelessly handled by defendant, and there being clear and substantial evidence that defendant left his home in Ohio under a cloud, with his father's pistol; that traveling afoot on a highway he was overtaken by an automobile driven by a lone traveler, who kindly took him into the car when he was in need and almost out of money; that the traveler's body was found on a cross-road away from the highway lying in a ditch surrounded by weeds; that defendant, after shooting him, appropriated his car and his other belongings, and continued his journey into another State, where he was arrested and brought back for trial, a verdict finding him guilty of murder in the first degree and assessing his punishment at life imprisonment will not be disturbed.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 955, p. 516, n. 24; Section 1512, p. 734, n. 20; p. 735, n. 31; Section 2096, p. 829, n. 31; 17 C. J., Section 3557, p. 211, n. 5; Section 3637, p. 295, n. 63; Section 3664, p. 321, n. 47; p. 322, n. 48.   **Homicide,** 30 C. J., Section 331, p. 128, n. 65; Section 588, p. 333, n. 52; Section 678, p. 429, n. 38.   **Indictments and Informations,** 31 C. J., Section 260, p. 708, n. 29.   **Infants,** 31 C. J., Section 212, p. 1094, n. 84.

Appeal from Pettis Circuit County.—*Hon. Dimmitt Hoffman,* Judge.

AFFIRMED.

*North T. Gentry,* Attorney-General, and *James A. Potter,* Assistant Attorney-General, for respondent.

(1)   The information is in the language of the statute and is therefore sufficient.   Sec. 3230, R. S. 1919; State v. Rasco, 239 Mo. 535; State v. Bacey, 267 S. W. 809.   The information purports to contain two counts, but they both relate to the same transaction and to the same crime, and evidence in support of count number two was admissible under count one.   State v. Brown, 119 Mo. 527.   (2)   The verdict was general, but under the evidence and pleadings was sufficient.   Where different counts are based on the same crime, involved in the same transaction, and defined in the same statute, a general verdict is sufficient. State v. Pace, 269 Mo. 681; State v. Evertz, 202

S. W. 614; State v. Bray, 246 S; W. 921. The second count in the information was wholly unnecessary, as evidence in support thereof was admissible under count one. State v. Brown, 119 Mo. 527; State v. Meyers, 99 Mo. 112; State v. Foster, 136 Mo. 653. (3) The manner of summoning the jury is relatively unimportant if the jurors summoned are competent. State v. Clinger, 46 Mo. 224; State v. Ward, 74 Mo. 253; State v. Matthews, 88 Mo. 121; State v. Wiley, 109 Mo. 439; State v. Breen, 59 Mo. 413; State v. Riddle, 179 Mo. 287. (4) Defendant made numerous objections to his trial in the circuit court, on the ground that the case should have been submitted first to the juvenile court. The evidence shows that the defendant was sixteen years of age on August 1, 1925; that he became seventeen years of age on August 10, 1925; that he was first formally charged with the crime on August 12, 1925, two days after he became seventeen years of age. The court will take judicial notice of the fact that Pettis County contains less than 50,000 inhabitants. The procedure is governed by Sections 1136, 1141 and 1136 as amended by Laws 1923, page 131. Under these sections the defendant was properly tried in the criminal division of the circuit court. Secs. 1136, 1141, R. S. 1919; Laws 1923, p. 131. (5) The written confession of defendant was admissible under the testimony of the State's witnesses. State v. Lee, 288 Mo. 41; State v. Hart, 292 Mo. 74; State v. McNeal, 237 S. W. 738; State v. Meyer, 293 Mo. 108; State v. Brown, 267 S. W. 871. (6) The testimony concerning defendant's trouble with a girl at Wilmington, Ohio, was admissible. The first statement referring to this matter came into the trial without any objection on the part of the defendant. The next reference came into the case as a part of defendant's confession. Defendant made no objection to this particular part of his confession, but objected only to the confession as a whole. The next reference to this matter came into the case in the defendant's letter written to his parents while in jail. No objection was made to the introduction of this letter. Defendant's counsel in his opening statement to the jury stated to the jury that defendant did not have any trouble with a girl in Ohio, and that the defendant would prove that to be true. The defendant put on several character witnesses who testified on this point, and in the cross-examination of these witnesses the State properly inquired as to rumors concerning the defendant's conduct at Wilmington. The court undertook to confine the evidence within legitimate channels, but defendant's counsel insisted that the court let down the barriers and permit wide latitude in the admission of evidence bearing on this question. Under these circumstances the defendant is in no position to complain of erroneous admission of testimony in this connection, and having invited the error, cannot now complain, if error was committed. State v. Jackson, 99 Mo. 60; State

v. Frazier, 137 Mo. 317; State v. Sasseen, 75 Mo. App. 197; State v. Palmer, 161 Mo. 152; State v. Goddard, 162 Mo. 198; State v. Hamey, 168 Mo. 167; State v. Jones, 171 Mo. 401; State v. Woodward, 182 Mo. 391; State v. Daugherty, 287 Mo. 82; State v. Stewart, 296 Mo. 12; State v. Mahan, 267 S. W. 866.

RAILEY, C.—On August 24, 1925, the Prosecuting Attorney of Pettis County, filed in the circuit court of said county, a verified information in two counts, charging defendant in the first count with murder in the first degree in the killing of Aden R. Clawson, in Pettis County, Missouri, on the first day of August, 1925; and in the second count charging said defendant with murder in the first degree, on the above date in said county, while perpetrating a robbery from the person of said Clawson. Both counts of the information were submitted to the jury, and the latter, on October 10, 1925, returned the following verdict:

"We, the jury, find the defendant guilty of murder in the first degree and assess his punishment at life imprisonment."

Thereafter, defendant filed his motion for a new trial, which was overruled, allocution granted, judgment rendered and sentence pronounced in conformity with said verdict.

The transcript of the evidence in this case covers about 275 pages. The appellant has filed no brief in this court. Assistant Attorney-General Potter has made a fair, clear and full statement of the facts as follows:

"The evidence, in general, shows that the defendant lives in Wilmington, Ohio, and is the son of H. S. Adams, a policeman in that city. The evidence further shows that the defendant was sixteen years of age on August 1, 1925, and that he became seventeen years of age on August 10, 1925, four days before he was formally charged with this crime. It further shows that the defendant left his home in Wilmington, Ohio, on the 30th day of July, 1925, on account of some trouble with a girl in his home city; that he had between three and four dollars in money at the time he left home; that he made his way westward from Ohio, and spent the night of July 31st at Union, Missouri, where he stayed all night at a private boarding house and left without paying his room rent; that he had a dollar and forty cents when he left Union; that on the morning of August 1, 1925, he caught a ride with two strangers from Florida, who were traveling westward from Union, Missouri, in an automobile; that he rode with these strangers until he reached a point some distance west of Jefferson City, where the car broke down; that he started down the road west on foot when he was overtaken by Aden R. Clawson, the deceased, who was also traveling in a westerly direction; that the deceased stopped his car and took the defendant in with him and the

two rode together until the deceased was killed between one and
two o'clock of the same afternoon, in Pettis County, Missouri.

"The evidence further shows that the deceased, Aden R. Clawson,
was about forty-three years of age and lived in the State of New
York; that he taught school during the school year of 1924-1925 at
Long Island, New York; that late in July, 1925, he purchased a
Chevrolet coupe automobile and started on a journey from his home
in New York to Colorado Springs, in the State of Colorado; that on
the night of July 31, 1925, he stayed all night at Gerald, Missouri,
where he was seen and observed by different people in his Chevrolet
car; that he mailed a postal card to his sister at Tiwanda, Pennsyl-
vania, from Gerald; that about noon on August 1, 1925, the deceased
was traveling westward along highway number 12 between St. Louis
and Kansas City, Missouri, somewhere west of Jefferson City, where
he overtook the defendant.

"The deceased and defendant were seen at Dresden, in Pettis
County, shortly after noon of August 1, 1925, where deceased pur-
chased gasoline from a garage owned by one Wiseman; they were
also seen at the town of LaMonte in Pettis County, some distance
west of Dresden, about one o'clock in the afternoon, where the de-
ceased purchased dinner for himself and the defendant at a restaurant
operated by Mr. and Mrs. Nollen. No one saw the deceased and
defendant after they left the town of LaMonte, but about the 10th
of August, 1925, the body of the deceased was found in a ditch in
Pettis County, some three or four miles southwest of the town of
LaMonte. The body was in a badly decomposed condition. Numerous
papers and documents were found on and near the body, indicating
the identity of the deceased. His body was later identified by a
brother-in-law, and upon its examination by the coroner and under-
taker it was discovered that he had died from a bullet wound from a
number .25 automatic pistol. One such bullet was found in the
body of deceased and was introduced at the trial; and it was proven
that it had passed through certain vital organs of the body.

"The evidence further shows that the defendant took possession of
the car of the deceased and drove it from where the body was found
to Pleasant Hill, Missouri, where he spent the night of August 1,
1925. He spent the night of August 2, 1925, at Hutchinson, Kan-
sas, and was arrested at Garden City, Kansas, in possession of the
car on the night of August 3, 1925. He was arrested by the officers
at Garden City on suspicion, and after being questioned by the offi-
cers he was lodged in jail because of his unsatisfactory and inconsist-
ent answers to questions. He first claimed that his name was Jordan
and that he lived in New York. He claimed he had the title to his car,
but was unable to find it. The next day the officers searched the
car and found numerous documents and papers bearing the name
   316 Mo.—11.

of Aden R. Clawson. Some clothes were also found in the car and it was discovered that they were too large for the defendant. On being confronted by these matters, the defendant then admitted that his real name was Adams and that he lived in Wilmington, Ohio. He then claimed that he purchased the car from a stranger near Terre Haute, Indiana, for the sum of $100 and that the clothes in the car belonged to this stranger. He claimed that Aden R. Clawson was a friend and schoolmate of his, but when he was told that Clawson was a member of the Masonic lodge and must have been a man of mature years, the defendant changed his story and claimed that Clawson was not a schoolmate of his, but that he was a friend of his and boarded with his parents. He told the officers that he spent the night of July 31st at Union, Missouri.

"The officers' continued to hold the defendant and started an investigation to determine the ownership of the car and the identity of A. R. Clawson. They learned that the defendant did spend the night of July 31st at Union, but that he did not have a car in his possession at that time. They learned further that Aden R. Clawson was the real owner of the car and that he spent the night of July 31st at Gerald, and had the car with him. They learned that the defendant was in possession of the car at Pleasant Hill, on the night of August 1, 1925, and that the deceased was not with him, and confronted by these facts, the defendant admitted his guilt and made a written confession of the crime. This confession was made in the presence of Ray Callahan, the prosecuting attorney at Garden City, Kansas, who was a former shorthand reporter and took the statement down in shorthand, after which he transcribed it and read it over to the defendant who signed the statement voluntarily in the presence of Ray Callahan, prosecuting attorney; Lee Richardson, chief of police; Oll Brown, sheriff of the county, and one Cook, secretary of the police board of Kansas City, Kansas, who was at that time visiting in Garden City. All of these witnesses testified at the trial and all of them testified that no promises of any kind were made to the defendant and that no duress of any kind was practiced on the defendant. In substance, the confession of the defendant admits that soon after he got into the car with the deceased, he conceived the idea of holding up the deceased because he (defendant) had only fifty cents on his person. That while the deceased had stopped the car to remove his coat on account of the heat, the defendant undertook to hold up the deceased; that the deceased said, 'You are a fine buddy,' and lunged at him; whereupon the defendant shot him. He further stated that after shooting and killing the deceased. he drove the car west to the first road running south; that he turned south and drove something like two miles, where he placed the body in a ditch surrounded by weeds, on a by-road, where it could not be

seen from highway number 12 or detour number 12. The defendant and deceased had been traveling on what was called detour number 12. In turning south from the detour defendant crossed main highway number 12 and drove on south a distance of a quarter of a mile, where the body was left by the side of the road.

"The evidence further tended to show that the car had blood on it at the time defendant was arrested in Garden City. Several articles owned by Clawson, including a pair of field glasses, a kodak and other things, were sold by the defendant and some of them were traced by his confession and recovered by the State and offered in evidence.

"The evidence of the State consisted of the testimony of Mrs. Manville, a sister of deceased, and her husband, Mr. Manville, who identified the body of deceased and the numerous articles found in and near the body and in the car at the time the defendant was arrested; they also identified certain articles sold by the defendant; the testimony of Mr. Wiseman, the garage-keeper at Dresden, where the deceased bought gasoline on August 1, 1925, and the testimony of Mr. and Mrs. Nollen at LaMonte, with whom the deceased and defendant had dinner on August 1, 1925; the testimony of certain farmers who lived near the place where the body of Clawson was left by the roadside; the testimony of the coroner of Pettis County and the undertaker at LaMonte, and the testimony of officers, Callahan, Brown and Richardson, of Garden City, and the witness Cook of Kansas City, Kansas.

"The defendant offered in his behalf the testimony of his mother and father of Wilmington, Ohio; they testified to the defendant's age, and the mother testified that he had no trouble with a girl at Wilmington. The father testified that he had not heard of any trouble with a girl at Wilmington. The father further testified that he owned the pistol found in the possession of the defendant in Garden City, which was shown to be a .25 automatic pistol, or at least he owned one just like it; that he quit carrying it on his beat because the safety catch on the revolver was not secure and the revolver was too easily discharged and was therefore dangerous.

"In addition to these witnesses the chief of police of Wilmington and one other witness testified to the defendant's reputation for good character in that city; they also testified that he had had no trouble with a girl at Wilmington.

"The defendant also testified in his own behalf. He admitted practically everything contained in his alleged confession except that relating to a very few facts. He denied that he tried to hold up the deceased; he admitted that the gun found in his possession at Garden City was in his possession at the time he got into the car with the deceased, and that he had placed it in the seat between him-

self and the deceased; that after riding with the deceased an hour or more, the deceased suggested that they stop the car and get out and stretch; that the defendant got out of the car first and was followed by the deceased; that the deceased had his coat off and was leaning up against the fender of the car; that the defendant picked up the gun from the front seat with his left hand and was transferring it to his right hand for the purpose of putting it in his pocket, when the deceased noticed the gun in the hands of the defendant, and, thinking that the defendant intended to hold him up, said, 'You are a fine buddy,' and lunged at the defendant, whereupon, the gun was discharged accidentally. That the defendant thereupon became very much excited and could think of nothing except his escape; that he then pushed the body into the car and drove down the road and deposited it at the place named in the confession. The defendant denied that he had robbed the body, but claimed that the articles he took were found in the seat and body of the car and that he took none of them off of the person of the deceased. He further denied that he had dinner at LaMonte, as testified to by certain of the State's witnesses, and claimed that he ate dinner with the men he rode with that morning. He admitted that the deceased purchased gasoline at or near the place testified to by the State's witness Wiseman.

"The sole issue in the case and the sole issue submitted to the jury was whether or not the defendant killed the deceased intentionally as charged by the State and admitted in the defendant's confession, or whether the deceased was accidentally killed as claimed by the defendant at the trial.

"All questions as to the *corpus delicti*, the identity of the deceased, and the venue of the crime were admitted by the defendant and proven by uncontradicted testimony offered by the State."

I.   The information in this case, is in the language of the statute and both counts of same properly charged defendant with murder in the first degree. [Sec. 3230, R. S. 1919; State v. Young, 286 S. W. l. c. 30-32; State v. Bacey, 267 S. W. 809-10; State v. Wilson, 231 S. W. 596, l. c. 599.]

**Information.**

II.   The verdict herein was general in its terms, found defendant guilty of murder in the first degree and assessed his punishment at life imprisonment. The first count of the petition charges defendant with murder in the first degree. The second count charges him with murder in the first degree while committing a robbery from the person of deceased.

**Verdict.**

Section 3230, Revised Statutes 1919, on which both counts were based, reads as follows: "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful,

deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or mayhem, shall be deemed murder in the first degree.''

Both counts are based on the same crime, relate to the same transaction and are defined in the same statute. The verdict returned was sufficient under either count of the information. [State v. Bray, 246 S. W. 921, 1. c. 922; State v. Pace, 269 Mo. 681; State v. Evertz, 202 S. W. 1. c. 616.]

(a) As suggested by counsel for respondent in their brief, there was no necessity for the second count, as evidence in support of same was admissible under the first count. [State v. Foster, 136 Mo. 1. c. 655; State v. Brown, 119 Mo. 527; State v. Meyers, 99 Mo. 1. c. 112-13, and cases cited.]

III. Defendant in his motion complained of the court's action in the selection of the jury to try the case. The court ordered the sheriff to summons a special *venire* of jurors consisting of thirty-four men. In making said order, the court made the following statement:

**Jury.**

''I say this is a case where the defendant is charged with murder in the first degree and it will be necessary to have thirty men qualify to sit on the petit jury. Now the law has required heretofore forty men, but the last Legislature cut it down to thirty. Now the regular jurors selected by the county court consist of twenty-four men; in addition to that the county court have selected alternates. I would suggest in getting the additional jurors you get the alternates of twenty-four men; that is a mere suggestion on my part—I do not know that you are bound by it, but I think that is a wise and wholesome method and I suggest you get the other twenty-four men; in addition I suggest you get about ten other good citizens. Now gentlemen, get the very best, high grade men you can—don't hesitate to get a man because he is busy, because the busy men are the most substantial citizens, and in addition to that I would also suggest in getting these other ten just mentioned that you go and get them from the east and southeast part of the county, because they or you are more likely to get men down there that know nothing about the case. That is a mere suggestion on my part and use your best judgment and best discretion in the matter.''

There is no statute which specifically directs the sheriff in summoning extra jurors. The crime is alleged to have been committed in the western part of Pettis County, and it is manifest from the remarks of the court that the latter was desirous of having a panel of competent and disinterested jurors to try the case. It is not claimed that any of the twelve men selected were prejudiced against defendant,

nor that any of them were not qualified to sit as jurors and properly try the case. The appellant suffered no injury by the action of the court and was accorded a fair trial before twelve competent jurors.

We were confronted with a similar contention in the recent case of State v. Knight, 278 S. W. 1. c. 1038, where it was said:

"Our attention is called to Sections 6621 and 6636, Revised Statutes 1919, as furnishing a basis for the above assignment. The above sections have been held to be directory only, and on the facts disclosed in this record would not warrant this court in granting a new trial. [State v. Bleekley, 18 Mo. 428; State v. Pitts, 58 Mo. 556; State v. Breen, 59 Mo. 413; State v. Ward, 74 Mo. 253; State v. Gleason, 88 Mo. 582; State v. Matthews, 88 Mo. 121; State v. Jennings, 98 Mo. 1. c. 497, 11 S. W. 980; State v. Albright, 144 Mo. 638, 46 S. W. 620; State v. Jackson, 167 Mo. 295, 66 S. W. 938; State v. Riddle, 179 Mo. 293, 294, 78 S. W. 606; State v. Stewart, 274 Mo. 656, 657, 204 S. W. 10; State v. Hayes, 262 S. W. 1036.]

"We are of the opinion, that the trial court listened with patience to the foregoing contention of appellant, and was not guilty of an abuse of judicial discretion in overruling the above assignment of error."

The foregoing contention of appellant is devoid of merit and overruled.

IV. Appellant made numerous objections to his trial in the circuit court, on the ground that the case should have been submitted first to the juvenile court of Pettis County. The evidence shows that appellant became seventeen years of age on August 10, 1925; that he was formally charged with above crime on August 12, 1925, two days after he became seventeen years of age. The court will take judicial notice of the fact that Pettis County contains less than 50,000 inhabitants. The case was properly tried in the criminal division of the circuit court of said county, as provided in Section 1136, Revised Statutes 1919, as amended by Laws of 1923, page 131, and Section 1141, Revised Statutes 1919.

*Juvenile Court.*

The above contention is likewise overruled.

V. The motion for a new trial charges the court with error in admitting improper evidence on behalf of the State. There were only three controverted issues in the case, which are as follows: First, whether the defendant killed the deceased accidentally or intentionally; second, whether defendant left his home in Ohio on account of trouble with a girl, and, third, whether his confession made to the sheriff and other officers in Kansas was voluntary or involuntary.

Disposing of these questions in the inverse order we find that clear and substantial evidence was offered as to the written confession of

**Confession.**  defendant having been voluntarily made and without any inducement being held out to him to make the same. In view of the proof offered, as to the execution of said confession, the court committed no error in permitting it to be read in evidence by the State. [State v. Brown, 267 S. W. 871; State v. Meyer, 293 Mo. 108; State v. McNeal, 237 S. W. 738; State v. Hart, 292 Mo. 74; State v. Lee, 288 Mo. 41.]

VI. The court committed no error in regard to the admission of testimony relating to defendant's connection with some girl in Ohio. Sheriff Brown, in testifying as to a conversation with defendant, said

**Extraneous Matter.**  the latter told him that he left home because of a little trouble he had with a girl. This testimony was given without objection. In his written confession offered in evidence, defendant, in speaking of the above girl, said: "This girl has been on my nerves too. I could not get her off my mind. She is the one that caused me to leave home the first time." Counsel for defendants in a statement before the jury, said his client did not have any serious trouble with a girl in Ohio. Thereafter said counsel insisted that he had the right to go into this matter fully, and the court permitted him to do so. The admission of evidence concerning defendant's connection with said girl, under the circumstances presented in the record, would afford no ground for reversing this case. [State v. Mahan, 267 S. W. 866; State v. Stewart, 296 Mo. 12; State v. Dougherty, 287 Mo. 82.] The defendant, having invited the error, if any was committed, in regard to above matter, is in no position to complain of same.

VII. Upon a careful reading of the record, we fail to find the preservation of a single exception to any ruling of the court rejecting any competent evidence offered by the defendant.

VIII. The defendant asked no instruction except a demurrer to the evidence, which was properly overruled. No objection was interposed at the trial to any of the instructions given by the

**Demurrer.**  court numbered from one to thirteen inclusive. They properly declared the law on all the issues involved in the case which were necessary to enable the jury to intelligently pass upon the merits of the case.

IX. The real issue submitted to the jury was whether or not defendant killed deceased intentionally as charged by the State and admitted in defendant's confession, or whether the deceased was accidentally killed as claimed by the defendant at the trial. The evidence is

**Accidental Murder.**  clear that defendant left his home in Ohio under a cloud, with his father's pistol, instead of his mother's Bible; that he came in contact with deceased who kindly took him into his car in time of need; that after leaving LaMonte in Pettis

County he brutally murdered his benefactor, threw his body in a ditch surrounded by weeds, appropriated deceased's car and belongings to his own use, and continued his journey to Kansas where he was arrested, brought back to the scene of his crime and sent to prison for life.

X. We have examined all the matters complained of in the motion for a new trial aside from those heretofore mentioned, and find that they are without merit. The defendant was properly convicted upon clear and substantial evidence, for murdering in cold blood a stranger who had befriended him when he needed assistance. On the facts presented in this record, he was fortunate in escaping with a life sentence, and is here without any merit in his appeal.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. *Walker, P. J.,* concurs; *White, J.,* concurs in separate opinion; *Blair, J.,* concurs in separate opinion of *White, J.*

WHITE, J., (concurring).—I concur in the result reached by RAILEY, C., in affirming the judgment in this case. I do not agree with the conclusion set out in Paragraph IV of the opinion.

It is stated that because the defendant was over seventeen years of age at the time the information was filed, therefore the court could not transfer the case to the juvenile court. Article V, Chapter 11, gives juvenile courts jurisdiction of children who *commit crimes* when they are under seventeen years of age. It is not the date of the filing of the information, but the date at which the crime was committed that determines whether the defendant may be a ward of the juvenile court. In this case the defendant became seventeen years of age on the tenth day of August, 1925, but the offense was committed on the first day of August, 1925; therefore when he committed it he was under seventeen years of age, and properly under the jurisdiction of the juvenile court, defined in Article V, Chapter 11, Revised Statutes 1919.

However, Section 1136, Revised Statutes 1919, has this provision: "In the discretion of the judge of the circuit court any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law, when in the judgment of such judge such child is not a proper subject to be dealt with under the reformatory provisions of this article."

So far as the opinion shows there was no petition or other proceeding by the defendant or his friends asking to have the defendant treated as a delinquent child and tried as such in the juvenile court. The trial court is presumed to have done its duty, and must have found

that the defendant was not a proper child to be dealt with under the reformatory provisions of the law.

*Blair, J.,* concurs in these views.